The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Herbert C. BROGA, Defendant–Appellee.

The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Herbert C. BROGA, Defendant–Appellant.

Nos. 86SA84, 87SA11.

Supreme Court of Colorado, En Banc.

Feb. 8, 1988.

Rehearing Denied Feb. 22, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Terrance A. Gillespie, David R. Little, Asst. Attys. Gen., Denver, for the people.

David F. Vela, Colorado State Public Defender, Barbara S. Blackman, Chief Deputy State Public Defender, Denver, for Herbert C. Broga.

MULLARKEY, Justice.

The defendant pled guilty in 1976 to sexual assault, burglary, and felony menacing. In 1982, the defendant escaped from the correctional facility where he was incarcerated for these charges. He was apprehended in 1983 and pled guilty to es-

cape, a class 3 felony. The district court sentenced the defendant to twelve years incarceration, a term in the aggravated range for a class 3 felony, to be served consecutive to the 1976 sentence.

In 1986, the defendant filed motions for correction of illegal sentence and for postconviction relief pursuant to Crim.P. 35. The motion for correction of illegal sentence was denied by the district court. The motion for postconviction relief was denied in part and granted in part. The defendant appealed part of the district court's order, claiming that the court's characterization of confinement as a per se aggravating factor for sentencing on an escape was error and that, therefore, his sentence in the aggravated range should be reduced. We affirm this portion of the order of the district court, holding that the district court entered sufficient findings to justify an aggravated sentence.

In the same order, the district court also ruled that the Department of Corrections incorrectly calculated good time in regard to the defendant's sentences. We conclude that the Department of Corrections' method of calculating good time credits was proper and, therefore, reverse that portion of the district court's order.

I.

On May 20, 1976, judgment was entered against the defendant upon his pleas of guilty to three counts of first-degree sexual assault, one count of second-degree burglary and two counts of felony menacing. The defendant was sentenced to concurrent terms, the maximum being not less than fourteen years nor more than twenty years incarceration. On June 8, 1982, the defendant was reported missing from the Rifle Correctional Center in Garfield County. The defendant was apprehended in Connecticut on January 1, 1983, returned to Colorado, and pled guilty to escape, a class 3 felony in violation of section 18–8–208(2), 8B C.R.S. (1986).[1]

---

1. § 18–8–208(2), 8B C.R.S. (1986) provides: "A person commits a class 3 felony if, while being

in custody or confinement following conviction of a felony other than a class 1 or class 2 felony,

The presentence report prepared on the defendant indicated that, in return for his plea of guilty to a charge of escape, no habitual offender charges would be filed against him. On June 13, 1983, the defendant appeared in the District Court for the County of Garfield for sentencing. After hearing arguments of counsel, the court stated: "Upon your plea of guilty to the crime of escape, a class 3 felony, the court finds that your prior criminal history is extremely aggravating, and that without incarceration, there is an undue risk of your re-offending." The court then noted that the defendant was being granted "very significant mitigation" by avoiding habitual offender sentencing and that the court was "presented with a tremendous aggravating circumstance per se, your having committed an offense while incarcerated under conviction of a felony, and the minimum the court can sentence you to is eight years and a day."

The court was relying upon section 18–1–105(9)(a), 8B C.R.S. (1986), which provides that the presence of certain "extraordinary aggravating circumstances" requires the sentencing court, if it sentences the defendant to incarceration, to sentence the defendant to a term greater than the maximum in the presumptive range but not more than twice such maximum term. One of the extraordinary aggravating circumstances listed is "confinement, in prison, or in any correctional institution within the state as a convicted felon ... at the time of the commission of a felony." § 18–1–105(9)(a)(V), 8B C.R.S. (1986). The court went on to state that "[i]n light of the [defendant's] aggravated criminal history, ... the sentence recommended by the probation department [the minimum aggravated sentence] is not appropriate." The district court then sentenced the defendant

to twelve years incarceration, a sentence in the aggravated range for a class 3 felony.[2]

On September 21, 1983, the defendant filed a motion for reduction of sentence pursuant to Crim.P. 35, arguing that he should have received the minimum aggravated sentence. In denying this motion, the court stated that when it had sentenced the defendant it had "not[ed] the defendant's prior criminal history." In June of 1985 the defendant filed motions to correct illegal sentence and for postconviction relief pursuant to Crim.P. 35. At the hearing on these motions, the defendant argued that *People v. Russell,* 703 P.2d 620 (Colo. App.1985), which held that confinement could not be an aggravating factor in sentencing on an escape conviction, required a reduction in the defendant's sentence. In denying this portion of the defendant's motions, the court, on January 15, 1986, ruled: "At the sentencing hearing, the court found that the defendant had escaped while in custody as the result of a conviction of a felony and that as such that was an extraordinary aggravating circumstance. The court further found that defendant's criminal history was in itself an extraordinarily aggravating circumstance." The court concluded that the defendant's sentence should not be reduced or set aside because the defendant's prior criminal history supported the sentence imposed.

The defendant further alleged in his motion for postconviction relief that the Department of Corrections (the department) was applying incorrectly the good time provisions of the Colorado statutes. "Good time credit" is a sentence reduction available to inmates who, generally, abide by the rules and regulations of the department. § 17–22.5–201, 8A C.R.S. (1986). Section 17–22.5–201, 8A C.R.S. (1986) (section 201), governs the award of good time credit to reduce the time served by inmates

---

he knowingly escapes from said custody or confinement."

All statutory citations in this opinion refer to the current codification. Except for the statutory sections contained in article 22.5 of title 17, the current codification of all statutes cited in this opinion is identical to that in effect at the time of the offenses at issue. As to article 22.5 of title 17, these statutory sections have been

recodified with minor changes; the operative language, however, is identical.

2. § 18–1–105(1)(a)(I), 8B C.R.S. (1986) provides that the presumptive range of penalties for a class 3 felony committed after July 1, 1979, and before July 1, 1984, is four to eight years incarceration plus one year of parole.

sentenced for crimes committed prior to July 1, 1979. Section 17–22.5–301, 8A C.R. S. (1986) (section 301), governs the calculation of good time credit for inmates sentenced for crimes committed on or after July 1, 1979. The department aggregated the defendant's 1976 and 1983 sentences into one term and calculated good time for that composite term pursuant to section 201. In its order of January 15, 1986, the district court ruled that the department was calculating incorrectly the defendant's good time credit, that section 201 should be applied to the defendant's 1976 sentence, and that section 301 should be applied to the defendant's 1983 sentence.

## II.

The court of appeals held in *Russell*, 703 P.2d 620, 622, that, because lawful confinement is an element of the substantive crime of felony escape, the commission of this element by itself could not logically constitute an extraordinary aggravating factor for purposes of sentencing on an escape conviction. We need not reach this issue, however, because the district court's finding that the defendant's prior criminal history was an extraordinary aggravating circumstance amply supports the defendant's sentence.

■ The district court's sentencing decision will not be modified absent a clear abuse of discretion. *People v. Watkins*, 684 P.2d 234 (Colo.1984); *People v. Hotopp*, 632 P.2d 600 (Colo.1981); *Triggs v. People*, 197 Colo. 229, 591 P.2d 1024 (1979); *People v. Strong*, 190 Colo. 189, 544 P.2d 966 (1976). Where the record establishes a clear justification for the sentence imposed, this court will not disturb the sentence. *Watkins*, 684 P.2d at 239; *People v. Warren*, 200 Colo. 110, 612 P.2d 1124 (1980). Where the sentencing court finds several factors justifying a sentence in the aggravated range, only one of those factors need be legitimate to support the sentencing court's decision. *See People v. Walker*, 724 P.2d 666 (Colo.1986).

We therefore uphold the sentencing decision of the district court.

## III.

We now turn to that portion of the district court's order holding that the department was calculating incorrectly the defendant's good time credits. We decided a similar issue in *Price v. Mills*, 728 P.2d 715 (Colo.1986), and we find the reasoning of that case persuasive in the controversy now before us. *Price* involved a challenge to the department's good time credit calculations by inmates serving concurrent sentences for pre–1979 and post–1979 offenses. The department, at that time, applied any credits established by section 201 to an inmate's aggregate sentence if a sentence for any pre-July 1, 1979, offense produced the longest incarceration term for the inmate. Section 301 was applied to the aggregate sentence if the incarceration term of any or all sentences for pre-July 1, 1979 offenses was shorter than the incarceration term of a sentence for an offense committed on or after July 1, 1979. As applied to the petitioners in *Price*, this meant that section 201 was used for their entire sentences. We held that, although other systems for calculating good time credits and applying them to a composite sentence might also be acceptable, there was no basis to require the department to alter its system. Although the defendant's sentences were imposed consecutively, while *Price* was concerned with concurrent sentences, we do not believe this distinction mandates a different result.

The department's aggregation of the defendant's sentences is authorized by section 17–22.5–101, 8A C.R.S. (1986), which states: "For the purposes of this article, when any inmate has been committed under several convictions with separate sentences, the department shall construe all sentences as one continuous sentence." *Price*, 728 P.2d at 719. The prohibition of section 17–22.5–304, 8A C.R.S. (1986), against double credits for an inmate serving sentences resulting from offenses that were committed both before and on or after July 1, 1979, provides further support for the department's aggregation of separate sentences. *Price*, 728 P.2d at 719.

The department's interpretation of the statutes is reasonable and contravenes no legislative or constitutional rights or policies. *Price,* 728 P.2d at 719; *see Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (prisoners have no constitutional rights to good time credits). The department's administrative interpretation of the statutes is entitled to great weight. *Price,* 728 P.2d at 719; *see Hewlett–Packard Co. v. Colorado,* 749 P.2d 400 (Colo.1988); *Trinity Universal Insurance Co. v. Hall,* 690 P.2d 227 (Colo. 1984); *Smith v. Myron Stratton Home,* 676 P.2d 1196 (Colo.1984).

We recognize that section 201 and section 301 might be interpreted to mandate separate good time credit calculations for the defendant's separate sentences. This interpretation, however, is at odds with section 17–22.5–304, 8A C.R.S. (1986) which states in part: "No person subject to the good time provisions of [section 201] shall be eligible for any of the provisions authorized by [section 301]."

The order of the district court is affirmed as it relates to the sentencing of the defendant to an aggravated term and reversed as it relates to the department's calculation of the defendant's good time credits.

QUINN, C.J., dissents in part, and ERICKSON and VOLLACK, JJ., join in the dissent.

QUINN, Chief Justice, dissenting in part:

I dissent from part III of the majority opinion, which reverses the district court's determination that the Department of Corrections (department) incorrectly calculated the defendant's good time credits. In resolving the issue of statutory good time credits, the majority relies basically on *Price v. Mills,* 728 P.2d 715 (Colo.1986). Because the facts in *Price* were substantially different from those present here, I find that decision analytically unsuitable for the proper resolution of this case.

I.

*Price* involved two inmates, Price and Jenkins, both of whom had been sentenced for crimes committed prior to July 1, 1979, and were later convicted and sentenced for additional crimes committed subsequent to July 1, 1979, while they were on parole from their earlier sentences. Price had been sentenced in 1974 to an indeterminate term not to exceed fifteen years, and again in 1976 for a consecutive indeterminate term not to exceed five years, thus resulting in a maximum term of imprisonment of twenty years. Price was later paroled, and in 1981 he was convicted of a crime committed subsequent to July 1, 1979, and was sentenced to a term of eight years to be served concurrently with the previously imposed 1974 and 1976 sentences.

The other inmate, Jenkins, had been sentenced in 1977 to three concurrent terms of indeterminate to twenty years. In 1983, while on parole, Jenkins was convicted and sentenced to eight years for a burglary committed in 1982. The eight year sentence was made expressly concurrent to the indeterminate to twenty year sentences imposed in 1977.

When Price and Jenkins filed cases challenging the department's calculation of good time credits, they were simultaneously serving sentences for offenses committed both before and after July 1, 1979. 728 P.2d at 718. As a result, they were conceivably subject to two different statutory good time schemes: section 17–22.5–201, 8A C.R.S. (1986) (hereinafter section 201), which establishes the formula for determining good time credits for offenders sentenced for crimes committed prior to July 1, 1979; and section 17–22.5–301, 8A C.R.S. (1986) (hereinafter section 301), which establishes the formula for determining good time credits for offenders sentenced for crimes committed on or after July 1, 1979. The department's method of allocating good time credits for concurrent sentences for crimes committed both before and on and after July 1, 1979, was to apply section 201 credits to the composite sentence "if a sentence for any pre-July 1, 1979, offense produces the longest incarceration effect

for the inmate," and to apply the section 301 credits to the composite sentence "if the incarceration effect of any or all sentences for pre-July 1, 1979, offenses is shorter than the incarceration effect of a sentence for an offense committed on or after July 1, 1979." 728 P.2d at 718.

Although we noted in *Price* that the department might well have adopted some other method of allocating good time credits for concurrent sentences imposed for crimes committed prior to and subsequent to July 1, 1979, we nonetheless concluded that the department's chosen method was reasonable and contravened no legislative or constitutional rights of the inmates. The department's method of calculating good time credits found support in section 17–22.5–101, 8A C.R.S. (1986), which requires the department to construe separate sentences as one continuous sentence whenever an offender "has been committed under separate convictions with separate sentences." Further support for our holding was found in section 17–22.5–304, 8A C.R.S. (1986), which prohibits any inmate subject to the good time credits of section 201 from receiving any good time credits authorized by section 301.

## II.

Since *Price* involved concurrent sentences which in functional effect constituted one term of imprisonment represented by the longest of the concurrent sentences imposed, *Schubert v. People*, 698 P.2d 788, 795 (Colo.1985), it would have been virtually impossible for the department to divide the concurrent sentences into discrete units of time and to apply one statutory credit formula to one part of the concurrent sentence and another statutory credit formula to another part of the same sentence, when in reality the inmate was simultaneously serving one term of imprisonment for all sentences. In this case, however, we are dealing with a consecutive sentence for a crime committed after July 1, 1979, which sentence by its very nature is separate and distinct from any previously imposed sentence. *See In re Packer*, 18 Colo. 525, 530, 33 P. 578, 580 (1893) (recognizing that a consecutive sentence commences only upon the expiration of the previous sentence).

In my view, the administrative considerations of uniformity and practicability of implementation present in *Price* are not present here. In the case of a consecutive sentence for a crime committed on or after July 1, 1979, there is no compelling administrative urgency to consolidate the consecutive sentence with the prior sentence imposed for a crime committed before July 1, 1979, and then to aggregate both sentences into one composite sentence for the purpose of allocating good time credits to the entire term of imprisonment based on which of the separate sentences will produce the longest incarceration effect on the inmate. I acknowledge that section 17–22.-5–101, 8A C.R.S. (1986), requires the department to construe an inmate's separate sentences as one continuous term of imprisonment. However, I find nothing in the statutory scheme to prohibit the allocation of good time credits in accordance with section 301 to a consecutive sentence which, although when aggregated with a prior sentence adds up to one continuous term of imprisonment, is nonetheless served in a period of time that is separate and distinct from a previously imposed sentence. Indeed, requiring the department to allocate section 301 good time credits to a consecutive sentence imposed for a crime committed on or after July 1, 1979, effectuates the mandate of section 17–22.5–304, 8A C.R.S. (1986), which states that section 301 good time credits "shall apply" to persons convicted of crimes committed on or after July 1, 1979.

For the above reasons, I dissent from part III of the court's opinion. I would affirm the judgment of the district court in its entirety.

I am authorized to say that Justice ERICKSON and Justice VOLLACK join me in this dissent.